# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHANTELL D. LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 12-3112-KHV |
| TROY J. CARRELL and | ) |
| STEVEN C. CHASTAIN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER

Under 42 U.S.C. § 1983, Shantell D. Lewis, an inmate in the custody of the Kansas Department of Corrections El Dorado Correctional Facility brings suit pro se and in forma pauperis against two correction officers – Troy J. Carrell and Steven C. Chastain – in their official and individual capacities. Plaintiff alleges that while Officer Chastain watched, Officer Carrell used excessive force during a pat-down search on January 20, 2012, in violation of plaintiff's Eighth Amendment rights. Plaintiff seeks nominal, compensatory and punitive damages, and equitable relief. This matter is before the Court on Officer Carrell's motion to dismiss, Defendant's Motion To Dismiss (Doc. #11) filed September 21, 2012. Because plaintiff does not seek injunctive relief, the Eleventh Amendment bars plaintiff's official capacity claim. Because plaintiff's complaint states a plausible Eighth Amendment violation that was clearly established at the time, the Court overrules Officer Carrell's request to dismiss plaintiff's individual capacity claim. The Court dismisses without prejudice plaintiff's claims against Officer Chastain for failure to effectuate timely service.

## Motion To Dismiss Standards

Under Rule 12(b)(6), Fed. R. Civ. P., Officer Carrell asks the Court to dismiss plaintiff's

Eighth Amendment claim because the Eleventh Amendment bars plaintiff's claim for damages in his official capacity and qualified immunity bars plaintiff's claim for damages in his personal capacity.

In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes as true all well-pleaded factual allegations and views them in the light most favorable to the nonmoving party. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Schwartz v. Booker, 702 F.3d 573, 579 (10th Cir. 2012). But the Court is not required to accept legal conclusions as true. See Iqbal, 556 U.S. at 679; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991). To survive a motion to dismiss, a complaint so construed must contain sufficient factual matter to state a claim that is plausible – and not just conceivable – on its face. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Mere "labels and conclusions," "threadbare recitals" or "formulaic recitation of the elements of a cause of action" will not suffice; plaintiff must offer specific factual allegations to support each claim. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011).

The plausibility standard is not a "probability requirement," but it requires plaintiff to allege "more than a sheer possibility that defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Plaintiff has pled a facially plausible claim when the factual content of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. It is not enough to plead facts that are "merely consistent with" liability. Id. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "shown" – that the pleader is entitled to relief. Id. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

> Nowhere in the law does context have greater relevance to the validity of a claim than prisoner civil-rights claims.  Prisons are a unique environment, and the Supreme Court has repeatedly recognized that the role of the Constitution within their walls is quite limited.  Government conduct that would be unacceptable, even outrageous, in another setting may be acceptable, even necessary, in a prison.

Gee v. Pacheco, 627 F.3d 1178, 1185 (10th Cir. 2010).

In this case, plaintiff is a pro se prisoner who brings claims against state officers.  Officer Carrell asserts sovereign immunity as to plaintiff's official capacity claim for damages and asserts qualified immunity as to plaintiff's personal capacity claim for damages.  To survive a motion to dismiss based on qualified immunity, plaintiff must allege sufficient facts that, when taken as true, show that defendant plausibly violated constitutional rights which were clearly established at the time of the violation.  Schwartz, 702 F.3d at 579 (citing Robbins, 519 F.3d at 1249).  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.

The Court construes plaintiff's pro se complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers.  Hall, 935 F.2d at 1110.  But the Court does not assume the role of advocate for a pro se litigant; he must "follow the same rules of procedure that govern all other litigants."  Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994).

**Facts**

The complaint, which the Court accepts as true and construes in the light most favorable to

plaintiff, states as follows:

On January 20, 2012, between 5:00 and 5:45 p.m. at the El Dorado Correctional Facility, Special Security Team Officers Carrell and Chastain approached and stopped plaintiff for a routine pat-down search near the east dining hall. Officer Carrell conducted the search while Officer Chastain watched. When Officer Carrell searched close to plaintiff's scrotum and penis area, he grabbed plaintiff's penis and applied pressure. Officer Carrell continued the search and asked plaintiff, "How does that feel?" When Officer Carrell finished the search, he and Officer Chastain smiled and laughed. Plaintiff felt humiliated and embarrassed. Later that day, plaintiff experienced pain in his groin area and blood in his urine.

Plaintiff seeks nominal damages, compensatory damages of $775,000, punitive damages of $175,000, costs of this suit and "any additional relief this court deems just, proper, and equitable." Civil Rights Complaint Pursuant To 42 U.S.C. § 1983 (Doc. #1) filed May 7, 2012 ("Complaint") at 5.

## Analysis

Under 42 U.S.C. § 1983, plaintiff sues Officer Carrell in his official and individual capacities for violating his Eighth Amendment rights during the pat-down search on January 20, 2012. Officer Carrell moves to dismiss plaintiff's official capacity claim based on Eleventh Amendment sovereign immunity and plaintiff's personal capacity claim based on qualified immunity.

**I.   Official Capacity Claim**

The Eleventh Amendment bars suits for damages against a state, its agencies and its officials acting in their official capacity, Russ v. Uppah, 972 F.2d 300, 303 (10th Cir. 1992), including Section 1983 claims, id. (citing Quern v. Jordan, 440 U.S. 332, 345 (1979). So it clearly bars

plaintiff's claim for money damages against Officer Carrell in his official capacity. See Stallings v. Werholtz, No. 10-3119-KHV, 2011 WL 6934266, at *5 (D. Kan. Dec. 30, 2011); Lile v. Simmons, 143 F. Supp.2d 1267, 1276 (D. Kan. 2001).

In response to Officer Carrell's motion to dismiss, plaintiff argues that he "can sue a state official in his official capacity for injunctive relief." Plaintiff Response To Defendant's Motion For Dismissal (Doc. #23) filed January 18, 2013. Under Ex parte Young, 209 U.S. 123 (1908), "a suit against a state official in his official capacity seeking prospective equitable relief is permitted, while a suit requesting retroactive relief is considered to be a suit against the state." Frazier v. Simmons, 254 F.3d 1247, 1253 (10th Cir. 2001) (citing ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1188 (10th Cir.1998)). Plaintiff's complaint does not expressly seek injunctive relief; it requests only nominal, compensatory and punitive damages, costs of the suit and "any additional relief this court deems just, proper, and equitable." Complaint (Doc. #1) at 5.

Although a "boilerplate recitation of 'just and equitable' relief included in one's prayer for relief is far from an exemplary request for prospective equitable relief under the Ex parte Young doctrine," it may be sufficient where the complaint alleges an ongoing violation that would entitle plaintiff to prospective relief. Frazier, 254 F.3d at 1254-55 (citing Calderon v. Kan. Dep't of Soc. & Rehab. Servs., 181 F.3d 1180 (10th Cir. 1999); Andrus v. Arkansas, 197 F.3d 953 (8th Cir. 1999)). Here, plaintiff's complaint alleges a single incident; it does not allege an ongoing violation that would entitle plaintiff to injunctive relief. The Court therefore dismisses plaintiff's claim against Officer Carrell in his official capacity.

## II.  Personal Capacity Claim

Government officials sued in their individual capacity are entitled to qualified immunity

from suit and liability for civil damages for performing discretionary functions so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Dodds v. Richardson, 614 F.3d 1185, 1191 (10th Cir. 2010). In resolving a motion to dismiss based on qualified immunity, the Court must consider whether the facts that plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct. Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting Leverington v. City of Colo. Springs, 643 F.3d 719, 732 (10th Cir. 2011)). The Court has discretion to decide which of the two prongs of the qualified immunity analysis to address first. Pearson, 555 U.S. at 236.

Whether a right is "clearly established" is an objective test: the relevant, dispositive inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brown, 662 F.3d at 1164 (quoting Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010)). For the law to be clearly established, ordinarily "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Id.; Green v. Post, 574 F.3d 1294, 1300 (10th Cir. 2009) (quoting Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 516 (10th Cir. 1998)).

Plaintiff has the burden of showing both that defendant violated a constitutional right and that the right was clearly established at the time of the alleged violation. Williams v. Berney, 519 F.3d 1216, 1220 (10th Cir. 2008). He "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it"; he "must articulate the clearly established constitutional right and the defendant's conduct which violated the right with

specificity." Green, 574 F.3d at 1300 (quoting Tonkovich, 159 F.3d at 517).

Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably. Pearson, 555 U.S. at 232. Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The "driving force" behind the qualified immunity doctrine was a desire to ensure that "insubstantial claims against government officials will be resolved prior to discovery." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). Accordingly, the U.S. Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

The "unnecessary and wanton infliction of pain constitutes cruel and unusual punishment," which the Eighth Amendment forbids. Hudson v. McMillian, 503 U.S. 1, 5 (1992). In determining whether a prison official's use of force was "unnecessary and wanton," the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)). Bearing in mind that not "every malevolent touch by a prison guard gives rise to a federal cause of action," id. at 9, the Court considers "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response," id. at 7 (quoting Whitley, 475 U.S. at 321). The extent of an inmate's injury is relevant, but an inmate need not show a "significant injury" or a certain level or type of injury to state a claim. Id. at 7, 9; United States v. LaVallee, 439

F.3d 670, 688 (10th Cir. 2006). De minimis uses of physical force are not cruel and unusual punishment unless "repugnant to the conscience of mankind." Id. at 9-10; Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992).

Accepting the allegations in the complaint as true and construing them in the light most favorable to plaintiff, they state a violation of an Eighth Amendment right that was clearly established at the time. Plaintiff alleges that as part of a routine pat-down search, Officer Carrell grabbed plaintiff's penis, applied pressure and asked "How does that feel?" When Officer Carrell finished the search, he and Officer Chastain smiled and laughed. Plaintiff later experienced pain in his groin and blood in his urine.

Inmates in the custody of the Kansas Department of Corrections are subject to search at any time. Kansas Department Of Corrections Internal Management Policy And Procedure (Doc. #1-1 at 14) attached as Exhibit B to Complaint (Doc. #1). Officers are trained to search a prisoner's groin area as part of a search because "inmates hide items on different areas of the body, especially in the groin area." Doc. #1-1 at 5.[1] Courts give "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Block v. Rutherford, 468 U.S. 576, 585 (1984) (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)); see also Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington,132 S. Ct. 1510, 1518 (2012). Nevertheless, viewing the complaint in the light most favorable to him, plaintiff has alleged sufficient facts to state a plausible claim that Officer Carrell used excessive force "maliciously and sadistically to cause harm" as opposed to applying force "in

---

[1] Exhibits attached to the complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss. Tal v. Hogan, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

a good-faith effort to maintain or restore discipline." Hudson, 503 U.S. at 5. Although pat-down searches are a necessary tool for maintaining discipline in prison, the amount of force which Officer Carrell allegedly used during an otherwise peaceful encounter could plausibly constitute a violation of plaintiff's clearly established Eighth Amendment rights under the circumstances as plaintiff has described them.

Officer Carrell relies primarily on two unpublished Tenth Circuit cases to argue that his alleged use of force was de minimis – Rhoten v. Werholtz, 243 Fed. Appx. 364 (10th Cir. 2007) and Joseph v. U.S. Fed. Bureau of Prisons, 232 F.3d 901 (Table), 2000 WL 1532783 (10th Cir. 2000). In Rhoten, the Tenth Circuit affirmed the dismissal of plaintiff's Eighth Amendment excessive force claim where he alleged that corrections officers slammed him against a wall, squeezed his nipples and buttocks, and pulled his testicles during a pat-down. 243 Fed. Appx. 364. In that case, the corrections officer conducted the pat-down based on Rhoten's behavior in the unit, and when the officer was patting down Rhoten's arm pits, Rhoten turned to face the officer and told him not touch him in that manner. Id. at 366. These facts suggest a confrontational search, unlike the search here. Rhoten also relied on medical evidence that the officer's use of force did not result in injury, id. at 367, whereas here, plaintiff alleges pain in his groin and blood in his urine as a result of Officer Carrell's actions.[2]

In Joseph, the Tenth Circuit affirmed the dismissal of plaintiff's Eighth Amendment excessive force claim that a secretary in the prison education department touched him several times in a suggestive manner and exposed her breasts, causing emotional distress. 2000 WL 1532783, at

---

[2] At this stage, the Court does not consider any evidence, medical or otherwise, that is not contained in or attached to plaintiff's complaint.

*1-2. The court found that objectively, the alleged sexual harassment was not sufficiently serious to state an Eighth Amendment violation. Id. But here, plaintiff alleges that Officer Carrell's actions caused pain in his groin and blood in his urine.

Assuming plaintiff's allegations to be true, and construing them in the light most favorable to him, the Court finds that he has plausibly alleged that Officer Carrell violated Eighth Amendment rights which were clearly established at the time. See Hudson, 503 U.S. at 5-7. ("core judicial inquiry" regarding Eighth Amendment excessive force claim is whether defendant applied force in good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm). On this record, Officer Carrell is not entitled to qualified immunity. See id.; see also Peterson v. Jensen, 371 F.3d 1199, 1201 (10th Cir. 2004) (noting summary judgment provides typical vehicle for asserting qualified immunity).

### III.  Claims Against Officer Chastain

On January 2, 2013, the Court ordered plaintiff to show cause in writing why the Court should not dismiss his claims against Officer Chastain without prejudice for failure to effectuate service of process. Order (Doc. #21); see also Order And Order To Show Cause (Doc. #15) filed October 31, 2012, vacated, Order (Doc. #21). The docket sheet indicates that plaintiff did not serve Chastain within 120 days after filing the complaint as required by Rule 4(m), Fed. R. Civ. P., and has yet to serve him. On July 10, 2012, the U.S. Marshals Service mailed a waiver of service and copy of plaintiff's complaint to Officer Chastain at the El Dorado Correctional Facility. On July 18, 2012, the envelope returned to the Marshals with a note stating, "Return to sender no longer employed here." Doc. #6 filed July 19, 2012 at 2. The unexecuted return of service states that "service by mail [was rejected], returned to sender, unable to forward." Id. at 1.

In response to the show cause order, plaintiff alleges that Officer Chastain quit his job at the El Dorado Correctional Facility because he did not want to answer plaintiff's complaint, and that Officer Chastain will return to work after this lawsuit concludes.  Plaintiff's unsupported assertions do not convince the Court that Officer Chastain has purposefully evaded service of process.  The Court dismisses plaintiff's claims against Officer Chastain without prejudice for failure to timely serve him.

**IT IS THEREFORE ORDERED** that Defendant's Motion To Dismiss (Doc. #11) filed September 21, 2012 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that plaintiff's claims against Officer Chastain be and hereby are **DISMISSED without prejudice** for failure to effectuate timely service.

Dated this 14th day of February, 2013 at Kansas City, Kansas.

s/  Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge