## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SHANTELL D. LEWIS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 12-CV-3112-DDC-JPO** |
| **TROY J. CARRELL,** | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. 40), filed August 8, 2013.  Having considered the submissions of the parties and the relevant authorities, the Court finds that the motion should be **GRANTED IN PART and DENIED IN PART**.

### I.      Procedural History

Plaintiff is an inmate in the custody of the Kansas Department of Corrections' El Dorado Correctional Facility.  He is proceeding pro se and filed this lawsuit under 42 U.S.C. § 1983 against a variety of defendants, including Special Security Team Officers Troy J. Carrell and Steven C. Chastain.  He sued Officers Carrell and Chastain in their official and individual capacities for allegedly violating his federal constitutional rights.  Remaining before the Court is plaintiff's suit against defendant Carrell in his individual capacity.

Plaintiff filed his Complaint and 44 pages of exhibits, sworn under penalty of perjury, on

1

May 7, 2012.  On July 9, 2012, after plaintiff failed to comply with an order addressing other defendants, the Court dismissed the action and denied relief against any defendants other than Carrell and Chastain.  Thereafter, the Kansas Department of Corrections filed a *Martinez* Report, and defendant Carrell filed a Motion to Dismiss on September 21, 2012.  Carrell's Motion to Dismiss asked the Court to dismiss plaintiff's claims against him because, he asserted, the Eleventh Amendment and principles of qualified immunity bar plaintiff's suit.  Initially, plaintiff failed to respond in the time allowed by our local rules, and the Court sustained defendant's motion.  In addition, because plaintiff had failed to serve defendant Chastain with process and more than 120 days had passed since plaintiff filed his action, the Court ordered plaintiff to show cause explaining his failure to serve process on Chastain.

Plaintiff responded to this order by asserting he had not received Carrell's Motion to Dismiss and so he asked the Court to reconsider.  The Court vacated its order and directed plaintiff to respond to the motion and also to serve defendant Chastain with process no later than January 28, 2013.  Plaintiff responded to part of the Court's directive:  he filed a response to the motion to dismiss but never served defendant Chastain.  Because plaintiff did not seek injunctive relief, the Court held that the Eleventh Amendment barred plaintiff's claim against defendant Carrell in his official capacity.  Further, finding that plaintiff's "complaint state[d] a plausible Eighth Amendment violation that was clearly established at the time, the Court overrule[d] Officer Carrell's request to dismiss plaintiff's individual capacity claim."  (Doc. 25 at 1)  Finally, the Court dismissed plaintiff's claim against Officer Chastain without prejudice because plaintiff never served him with process.  In sum, Officer Carrell is the only defendant in this action and the last claim standing sues him in his individual capacity.

2

Defendant Carrell argues in his Motion for Summary Judgment that plaintiff failed to exhaust all available administrative remedies, as the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) requires.  As the Court noted in its order of January 17, 2014, defendant's motion presents 11 separately numbered fact paragraphs and several pages of supporting legal argument.  Our local rules obligated plaintiff to file his response to this motion no later than August 29, 2013.  *See* D. Kan. Rule 6.1.  Five days after this deadline expired, plaintiff submitted 32 pages of exhibits.  (*See* Doc. 45)  This filing never explicitly stated it was submitted in response to the pending summary judgment motion or the Court's order.  Moreover, nothing about this submission complied with Fed. R. Civ. P. 56 or D. Kan. Rule 56.1.

In an order entered January 17, 2014, the Court advised plaintiff that his submission did not comply with the rules and awarded him even more time, until February 7, to file a response that conformed to the rules.  (Doc. 47)  Plaintiff did not respond before the February 7 deadline.  On June 13, 2014, the Court ordered plaintiff to show cause in writing no later than June 27, 2014, why he had failed to respond to defendant's motion in a timely fashion.  The Court also explained why plaintiff's submission of exhibits was an inadequate response to the Motion for Summary Judgment, pointed plaintiff to the relevant rules so he could file a rule-conforming responsive brief, and ordered plaintiff to file any Opposition he wished the Court to consider by June 27, 2014.  (Doc. 49)  The Court warned plaintiff that if he failed to respond, the Court would consider and rule on defendant's Motion for Summary Judgment as an uncontested one.  Plaintiff never responded to this order.

## II.    Legal Standards

Pursuant to D. Kan. Rule 7.4(b), if a non-movant fails to file a timely response to a motion, it "will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."  By failing to file a response that comports with our Court's rules of practice, plaintiff has "waived the right to file a response or to controvert the facts asserted in the summary judgment motion."  *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).  But mindful that courts liberally construe a pro se litigant's pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (U.S. 1972), the Court must "make the additional determination that judgment for [defendant] is 'appropriate' under Rule 56."  *Reed*, 312 F.3d at 1195.

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Garrison*, 428 F.3d at 935.  A "genuine" issue exists where sufficient evidence exists on either side of the issue such "that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248).

The movant initially carries the burden "to point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law."

*Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  The movant need only demonstrate "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671 (citing *Celotex*, 477 U.S. at 323).  If the movant carriers this burden, the nonmovant must "go beyond the pleadings" and show admissible evidence "from which a rational trier of fact could find for the nonmovant." *Id.* (citing Fed. R. Civ. P. 56(e); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248).  The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Our Court of Appeals also encourages use of additional procedures in cases like this one. "In pro se prisoner litigation, the Tenth Circuit endorses the filing of a '*Martinez* report' where the prison constructs an administrative record detailing the factual investigation of the events at issue." *Spurlock v. Simmons*, 88 F. Supp. 2d 1189, 1191 (D. Kan. 2000) (citing *Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978)).  "The *Martinez* report 'is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence.'" *Id.* (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991))).  "The pro se prisoner's complaint, when sworn and made under a penalty of perjury, is also treated as an affidavit and, like the *Martinez* report, serves as evidence [to be used in] a summary judgment determination." *Id.* (citing *Green*, 108 F.3d at 1302).

Here, plaintiff has submitted a Complaint (Doc. 1) and 44 pages of exhibits, sworn and

made under a penalty of perjury.  (*See* Doc. 1)  He also has submitted another 32 pages of

exhibits (Doc. 45), presumably meant as a response to defendant's summary judgment motion.

Consistent with the practice in our Circuit, defendant has submitted a *Martinez* report.  The

Court will consider the *Martinez* report and all of plaintiff's submissions as part of the summary

judgment record.

### III.    Factual Background[1]

Plaintiff is an inmate in the custody of the Kansas Department of Corrections ("KDOC")

and is incarcerated at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas.

Defendant Troy J. Carrell is and at all times relevant to this suit was employed by the KDOC as a

Correctional Officer on EDCF's Special Security Team.  On January 20, 2012, defendant Carrell

conducted a pat-down search of plaintiff.  During this search, plaintiff asserts, defendant grabbed

his penis, applied pressure to it, and asked plaintiff, "How does that feel?"  Plaintiff also asserts

that defendant smiled and laughed while he did so.  Plaintiff asserts that this humiliated and

---

[1] In accordance with summary judgment procedures, the Court has recited the uncontested facts and the contested facts in the light most favorable to plaintiff.  In addition, "[a]s necessary, the Court supplements defendant['s] statement of facts with facts taken from plaintiff's complaint" and the exhibits plaintiff submitted on September 3, 2013, both of which plaintiff swore under penalty of perjury, and the report defendant filed September 6, 2012, prepared pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).  *McGuire v. Hrabe*, No. 07-3147-KHV, 2008 WL 4305437, at *2 n.3 (D. Kan. Sept. 18, 2008) (citing *Hall v. Belmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (*Martinez* report treated as affidavit; complaint treated as affidavit to the extent it alleges facts based on plaintiff's personal knowledge and is sworn under penalty of perjury)).

As noted above, by not filing an appropriate responsive brief to defendant's motion, "plaintiff has waived the right to controvert defendant['s] statement of facts." *Rassel v. Werholtz*, No. 07-3290-KHV, slip op. at *3 n.3 (D. Kan. Jan. 21, 2010) (citing D. Kan. Rule 56.1(a) ("all material facts set forth in statement of movant deemed admitted for purpose of summary judgment unless specifically controverted by statement of opposing party")); *see also Luginbyhl v. Corr. Corp. of Am.*, 216 F. App'x 721, 723 (10th Cir. 2007) (by failing to offer timely response, party may waive right to controvert facts in summary judgment motion); *McGuire*, 2008 WL 4305437, at *2 (pro se litigant governed by same procedural rules as other litigants; on summary judgment, Court accepts as true facts which pro se litigant does not controvert)).

embarrassed him, and that he experienced pain, swelling, and blood in his urine as a result of the pressure defendant applied to his penis.

Sometime between January 20 and 27, 2012, plaintiff submitted an Inmate Grievance Form (later numbered Grievance # 17960) reporting the incident to his unit team at EDCF.  The summary judgment record contains three different versions of plaintiff's grievance form.  (*See* Doc. 1-1 at 2-4; Doc. 1-1 at 12-13; Doc. 41-1 at 5-7)  Defendant contends that the version he has submitted constitutes the original grievance form and that it contains plaintiff's handwritten account of the incident.  (*See* Doc. 41 at 6 (citing Doc. 41-1 at 6-7))  The two versions submitted by plaintiff differ from the one submitted by defendant.  The most obvious differences are found in plaintiff's handwritten narrative of the circumstances constituting his grievance.  In plaintiff's version he claims that Officer Carrell caressed his inner thigh, then grabbed his penis, applied pressure and asked, "How does that feel?"  (Doc. 1-1 at 3)  Plaintiff also asserts that later in the day, he experienced pain, swelling, and blood in his urine.  (*Id.* at 4)  Conversely, in the version of plaintiff's narrative submitted by defendant, plaintiff asserts that Officer Carrell applied a "little pressure" to his genitalia.  (Doc. 41-1 at 5-6)  It appears plaintiff's two versions of the narrative, though purportedly prepared on or before January 27, 2012, refer to events occurring 12 days later on February 8, 2012.  (*See* Doc. 1-1 at 3; Doc. 1-1 at 12)

In addition to the three versions of plaintiff's narrative of his grievance, the summary judgment record also contains evidence that plaintiff submitted an "Inmate Request to Staff Member" form dated January 25, 2012, and someone identified only as "COI J. Fred" signed it on the same date.  (Doc. 1-1 at 33)  In this Inmate Request form, plaintiff asked for medical

treatment because he had blood in his urine and swelling around his penis.[2]  (*Id.* at 33-34)  The record contains no evidence that plaintiff submitted a "Property Damage/Loss or Personal Injury Claim Form" under KDOC Internal Management Policy and Procedure Section Number 01-118. (*See* Doc. 45 at 24-26)

On January 27, 2012, plaintiff's Unit Manager, M. Bos, responded to plaintiff's grievance.  (Doc. 1-1 at 5)  Bos informed plaintiff that EDCF trains members of its security staff how to conduct pat searches properly, and such a search includes a search of the groin area. Plaintiff reacted to M. Bos's response to his grievance by appealing to EDCF's Warden, Warden Heimgartner, on January 30, 2012.  The Warden responded to plaintiff's appeal by explaining that his review led him to conclude that no further action was necessary.  (Doc. 1-1 at 1)  This response by the Warden is dated February 7, 2012, but both defendant and plaintiff's submissions of the Inmate Grievance Form show that plaintiff received the Warden's response eight days later on February 15, 2012.  (Doc. 41-1 at 4; Doc. 1-1 at 2)

Defendant asserts that plaintiff failed to appeal the Warden's rejection of plaintiff's Grievance # 17960 to the Secretary of Corrections.  Defendant supports this assertion by relying on an affidavit from Trudi Temple, a Senior Administrative Assistant at EDCF who serves as custodian of the inmate grievance records.  (Doc. 41-1 at 1-2)  Ms. Temple testified in her Affidavit that she had reviewed the grievance appeal records pertaining to plaintiff and she did not find any indication among those records that plaintiff had appealed Grievance # 17960 to the

---

[2] Both parties also submitted aspects of plaintiff's healthcare records.  For the most part, plaintiff submitted records of his requests for healthcare appointments, and defendant submitted corresponding healthcare notes and records. The January 25, 2012 request is the only record submitted by the parties showing that plaintiff submitted evidence of a healthcare request.  Defendant did not submit a medical record corresponding to this date or any healthcare notes corresponding to plaintiff's January 25, 2012 request.  Thus, the Court cannot determine as a matter of uncontroverted fact whether plaintiff saw a medical professional as a result of his request on January 25, 2012.

Secretary of Corrections.  Defendant also submitted an affidavit from Doug Burris, Corrections

Manager in the Division of Facilities Management.  (Doc. 41-1 at 9-10)  Mr. Burris serves as the

Secretary of Corrections' designee for reviewing and deciding inmate grievance appeals.  (*Id.*)

Mr. Burris testified in his Affidavit that he had reviewed grievance appeal records for the period

January 1, 2012 to May 7, 2012, and those records show plaintiff took no appeal of a grievance

to the Secretary of Corrections.  (*Id.*)

Plaintiff responds to defendant's assertions by EDCF's Warden by furnishing evidence

that on February 15, 2012, he submitted an "Account Withdrawal Request" seeking $0.45 in

postage so he could send legal mail to the Secretary of Corrections, Landon State Office

Building, 900 Jackson, 4th Floor, Topeka, Kansas 66612.  (Doc. 1-1 at 6)  The withdrawal

request contains the signature of someone named "Perkins," and is dated February 15, 2012.

(*Id.*)  Plaintiff also has submitted an "Appeal of Grievance to Secretary of Corrections" form,

along with a handwritten note he completed on or around February 15, 2012.  (*Id.* at 8-13)

Plaintiff's exhibits include an "Inmate Request to Staff Member" form dated August 16, 2013.

(Doc. 45 at 8)  In this form, plaintiff says he had the following exchange with someone he

identifies as "Unit Team Perkins:"

> Remember last year when it was February 15, 2012 and I was in your Pod, and I
> camed back from the local library and it was around 3:16 p.m., and I needed your
> signature to send out my grievance about the sexual assault from a SSI officer that
> I was telling you and S. Sgt. Smith when we was in your office, to the Secretary
> of Corrections.  I need an affidavit from you stating that you seen the grievance
> that I sent to the Secretary of Corrections with your signature and dated from you
> so I can attached that affidavit to my responds back to the Judge.

(*Id.* (*sic*))  According to plaintiff's submissions, Perkins replied to this question in a handwritten

entry found at the bottom of this same form with the following statement:  "I do recall this issue.

We discussed it on 2/27/2012.  I did sign & deliver your mail on 2/15/2012, the copy of the attached SPO shows that it was mailed from the EDCF mailroom.  Your Exhibit C."  (*Id.*)  Perkins' reference to "Your Exhibit C" is hardly clear, but the Inmate Request form that bears Perkins' note also bears the inscription, "Exhibit C."  (*Id.*)

Besides his "Appeal of Grievance to Secretary of Corrections" form, plaintiff also submitted a handwritten note as an attachment to his Complaint.  This notes states, in part:

> This is the Appeal of Grievance to Secretary of Corrections on what I think that the Warden, Principal Administrator, and the Secretary of Corrections should or Shall have done:
>
> But because the Secretary of Corrections had 20 working business days from receipt to return my grievance report form back to me with an answer.  The Secretary of Corrections never responsed back to my grievance form which entitle that I have exhausted my remedies . . . .  From February 14th 2012 to March 15th 2012 was exactly 20 working business days that he had the chance to response . . . .

(Doc. 1-1 at 7 (*sic*))

Defendant asserts that the Central Office of the Secretary of Corrections in Topeka regularly retains all Appeal of Grievance forms properly submitted to the Secretary.  They are, according to defendant, date-stamped and maintained in the Secretary's business records.  (Doc. 41 at 9-10)  Defendant asserts that plaintiff's version of his appeal documents contains no such date stamp.

**IV.    Exhaustion Analysis**

**A.  Overview**

It is difficult to apprehend the gravamen of plaintiff's claim.  Consequently, the Court starts by examining two distinct avenues of administrative exhaustion established in Kansas law.

Article 15 of chapter 44 of the Kansas Administrative Regulations codifies the first group of potentially relevant regulations. These regulations govern "inmate grievances" covering "a broad range of matters that directly affect the inmate, including" complaints about policies and conditions of imprisonment, actions of employees and other inmates, and incidents occurring within the facility. Kan. Admin. Reg. § 44-15-101a(d)(1)(A)-(B). This regulation applies to a constitutional claim such as the one asserted here, where the conduct complained of stems from "actions by employees" of the prison facility. *Id.* § 44-15-101a(d)(1)(B).

Article 16 of chapter 44 of the Kansas Administrative Regulations codifies the second group of such regulations. Kan. Admin. Reg. § 44-16-104a (2008 Supp.) applies to claims for personal injury and it provides: "(a) Each inmate claim for personal injury shall be submitted to the [prison] facility and [the] secretary of corrections within 10 calendar days of the claimed personal injury." As discussed in part C, below, defendant asserts that plaintiff has failed to submit a personal injury claim form and thus has failed to comply with § 44-16-104a. *See also* KDOC Internal Mgmt. Policy and Procedure § 01-118.

The authorities make it clear that these two sets of administrative procedures are distinct from one another. As the Kansas Court of Appeals has put it, the administrative procedures detailed in article 16 "govern[] inmate personal injury claims [and this article's procedures are] separate and distinct from the procedure for handling grievances" addressed by article 15 and, specifically, § 44-15-101.[3] *Redford v. Kansas ex rel. Dep't of Corr.*, 295 P.3d 1054, 2013 WL

---

[3] Defendant's brief blurs the distinction between the Kansas regulations that govern personal injury claims vis-à-vis the regulations that govern a broad[er] range of grievance subject matters. *See generally* Doc. 41 at 5, 6 and 8. For instance, the defendant defines the issue presented by his motion in this fashion: "Whether, under the Prison Litigation Reform Act, did Plaintiff exhaust all available administrative remedies when he failed to file a *personal injury claim* as required under K.A.R. § 44-16-104(a) and failed to complete the Kansas Department of Correction's

781102, at *6 (Kan. Ct. App. Mar. 1, 2013) (unpublished table decision); *see also* Kan. Admin. Reg. § 44-15-102.  This means an inmate who wishes to pursue both a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act.  *See*, *e.g.*, *Sharrock v. Stephens*, No. 10-CV-3210-CM/SAC, 2011 WL 5526444, at *1 (D. Kan. Nov. 14, 2011) ("Importantly, the requirements in [§ 44-16-104a] apply regardless of whether the inmate pursues a grievance pursuant to § 44-15-101."); *Redford*, 2013 WL 781102, at *6 (This Kansas regulation "expressly provides:  'The grievance procedure [in article 15] shall not be used in any way as a substitute for, or as part of, the . . . property loss or personal injury claims procedure.'") (quoting Kan. Admin. Reg. § 44-15-101a(d)(2)).

These administrative processes and remedies matter, of course, because both federal law and Kansas law require prisoner plaintiffs to exhaust the administrative procedures as a condition to filing suit about their treatment while imprisoned.  Namely, the PLRA forbids an inmate from suing under § 1983 or "any other Federal law . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The cases applying the PLRA have held that this requirement means exactly what it says.  Exhaustion of administrative remedies "is mandatory, and the district court [is] not authorized to dispense with it."  *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010).[4]

---

grievance procedure?"  But this regulation presents just one of the issues at stake here and, as the Court understands the Complaint, not the predominant one.

[4] When Congress enacted the PLRA, it sought to "filter out frivolous claims and facilitate an administrative record through an internal grievance process, thereby 'reduc[ing] the quantity and improv[ing] the quality of prisoner suits.'"  *Villescaz v. City of Eloy*, No. CV–06–2686–PHX–FJM, 2008 WL 1971394, at *3 (D. Ariz. May 2, 2008) (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).  "The PLRA attempts to promote prison autonomy by

12

Kansas law is no different.  K.S.A. 75-52,138 requires an inmate in the custody of the Kansas Secretary of Corrections to exhaust the administrative remedies promulgated by the Secretary and to submit with his petition "proof that the administrative remedies have been exhausted."  *Id.*  The next two sections apply the requirements of these administrative regulations to plaintiff's claim (or claims) here.

### B.  Exhaustion Under Kan. Admin. Reg. § 44-15-101 (Plaintiff's § 1983 Claim)

The Court first considers whether plaintiff failed to exhaust the administrative remedies that govern his § 1983 claim, as required by Kan. Admin. Reg. § 44-15-101(d).  This regulation establishes the procedure governing "inmate grievances" and as explained earlier, it applies "to a broad range of matters," including alleged "actions by employees" of the correctional facility, such as defendant Carrell here.

The KDOC's regulations establish a four-part grievance process inmates must complete.  *See* § 44-15-101(b), (d).  An inmate begins the grievance procedure by attempting "to reach an informal resolution of the matter with the personnel who work with the inmate on a direct or daily basis." § 44-15-101(b).  If the prisoner cannot resolve the matter informally through these means, he must then proceed through three additional levels of what the regulation terms as "problem solving."  As pertinent to prisoners in custody, it provides:

> (1) Level 1.  The inmate shall first submit the grievance report form to an appropriate unit team member of the facility. . . .
>
> (2) Level 2.  The inmate shall then submit the grievance report form to the

---

eliminating unnecessary interference of the administration of prisons by the federal courts."  *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006)).  The "inmate may only exhaust by properly following all the steps laid out in the prison system's grievance procedures."  *Little*, 607 F.3d at 1249 (citing *Woodford*, 548 U.S. at 90).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . . ."  *Id.* (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

warden of the facility. . . .

> (3) Level 3.  If not resolved, the grievance may be next submitted to the office of the secretary of corrections.  Either a response to the grievance or referral of the matter to a deputy secretary of corrections for additional investigation, if necessary, shall be made by the warden.  Grievances of inmates may be referred by the secretary to the deputy secretary of corrections for facility management.

§ 44-15-101(d)(1)-(3).  Defendant seems to argue that plaintiff failed to comply with this administrative process because:  (1) he submitted fraudulent documents to the Court, and thus his "original" grievance did not comply with Level 1 of the grievance procedure; and (2) he did not submit a grievance to the secretary of corrections under Level 3 of the grievance procedure.  (Doc. 41 at 6-8)  The next two subsections address these arguments separately.

### 1.  Did plaintiff comply with Level 1 of the grievance procedure?

As explained above, the summary judgment record contains three different versions of plaintiff's grievance form.  (*See* Doc. 1-1 at 3-4; Doc. 1-1 at 12-13; Doc. 41-1 at 5-7)  Defendant contends that the version he submitted is the authentic "original" and that plaintiff has altered the two versions of the grievance form he submitted in his exhibits.  To support this assertion, defendant points out that plaintiff submitted his grievance sometime between January 20 and 27, 2012, but he notes that both versions submitted by plaintiff reference events occurring more than a week later, on February 8, 2012.  (Doc. 1-1 at 3, 12)  Logically, defendant says, it was impossible for plaintiff to reference things that did not happen until February 8 in a grievance he submitted no later than January 27.  (Doc. 41 at 7-8)  The Court agrees that a fact-finder is likely to take a dim view of the credibility of plaintiff's position.  But the Court declines to conclude as a matter of law that plaintiff has failed to exhaust his administrative remedies because plaintiff

may have contrived some portion of the documents he submitted to the Court.  The current record does not establish such a contrivance as a matter of uncontroverted fact.  And while a rational jury could infer that plaintiff contrived the documents he submits, it is not the inference most favorable to plaintiff.  In sum, without a more fulsome summary judgment record, the Court cannot make the finding or draw the inference on which defendant's argument relies.

The Court turns next to the content of plaintiff's grievance submissions and determines whether their content – when read in the light most favorable to plaintiff – complies substantively with the procedural requirements of the Kansas regulation.  Remembering that defendant has submitted one version of the grievance and plaintiff has submitted two versions, the most evident differences among them is found in the handwritten portions of the grievance. Namely, (a) plaintiff's two versions specifically describe his injuries (swelling and blood in his urine) (Doc. 1-1 at 3-4; Doc. 1-1 at 12-13); while (b) defendant's version of the grievance form provides no details of the injuries, only generalities ("it's hurting me" and "the pain that I have suffered") (Doc. 41-1 at 5-7).  Additionally, plaintiff's versions emphasize defendant's demeanor and harassing tone during the search; in contrast, in defendant's version plaintiff spends less time interpreting defendant's motivations for the search and more time challenging whether a proper pat-down search includes physical contact with a prisoner's genitals.

Again, based on these differences, defendant argues that plaintiff has contrived the versions of the grievance he submits so he can claim he complied with Level 1 of the grievance procedure.  While a different summary judgment record might permit the Court to find this as uncontroverted fact or recognize it as the only permissible inference, the current record permits neither conclusion.  Consequently, the Court cannot say that defendant's view represents the

only rational conclusion a jury could reach.  *See Adler*, 144 F.3d at 670 (genuine issue of fact exists when a rational trier of fact could resolve the issue either way).  Thus, the Court again declines to find as a matter of uncontroverted, summary judgment fact that plaintiff has contrived compliance with the administrative regulations.

Defendant next asserts that the version of the grievance plaintiff purportedly submitted omits key information, to wit: (1) details about defendant Carrell's "harassing manner" and defendant's conduct when he asked plaintiff "how does that feel?" and began to smile and laugh; (2) details about plaintiff's injury, including his assertion that he urinated blood; and (3) details about plaintiff's request for monetary damages.  (*See* Doc. 41-1 at 4-7)  Defendant contends these omissions keep plaintiff's grievance from fulfilling the substantive requirements established by KDOC's administrative procedure.  (Doc. 41 at 6-7)  Defendant never explains, however, why the omitted information renders plaintiff's grievance insufficient under the regulations; nor does defendant cite any authority for his argument.  The Court concludes that defendant's argument falls short.  That one version of plaintiff's grievance does not contain these pieces of information is insufficient to conclude as a matter of law that plaintiff has failed to comply with Level 1 of the grievance procedure specified in § 44-15-101(b).

According to Kan. Admin. Reg. § 44-15-102, an inmate's grievance must contain the following information:

> (A) A specific complaint that states what or who is the subject of the complaint, related dates and places, and what effect the situation, problem, or person is having on the inmate that makes the complaint necessary;

> (B) the title and number, if possible, of any order or regulation that could be the subject of the complaint;

(C) the action that the inmate wants the warden to take to solve the problem;

(D) the name and signature of the responsible institution employee or employees or of the parole officer from whom the inmate sought assistance.  This signature shall be on either an inmate request form or the grievance report form.  The date on which the help was sought shall be entered by the employee on the form; and

(E) the date on which the completed grievance report was delivered to the staff member for transmittal to the office of the warden.

§ 44-15-102(b)(1)(A)-(E).  Defendant never argues that plaintiff's grievance falls short of these requirements, and so the Court concludes that all three versions of plaintiff's grievance form contain sufficient details to meet this regulation's requirements.

Notably, defendant's version contains sufficient information to satisfy the regulatory requirements.  It provides:  (A) plaintiff's specific complaint providing details about the allegedly inappropriate pat-down search; (B) notice of plaintiff's potential claims of sexual assault, battery, and allegations of an improper search that resulted in injury and pain (in violation of plaintiff's Eighth Amendment rights, although he did not specify this); (C) plaintiff's request that prison officials stop defendant from conducting improper searches and that the defendant be suspended without pay or fired; (D) an "Inmate Request to Staff Member" form requesting medical treatment, dated January 25, 2012, and signed by "COI J. Fred" (Doc. 1-1 at 33-34); and (E) evidence that plaintiff delivered the completed grievance report to a staff member to be forwarded to the Warden on January 30, 2012.  (Doc. 1-1 at 4-7)

In summary, all three versions of plaintiff's grievance provide sufficient information to give prison officials notice of the substance of plaintiff's federal constitutional claim.  *Cf. Smith v. Rudicel*, 123 F. App'x. 906, 907-08 (10th Cir. 2005) (where prisoner filed "statements" to prison officials that "merely outline[d] the incidents" but "failed to allege the" cause of action in

his § 1983 claim, prisoner did not disclose the nature of his grievance sufficiently to "provid[e] prison officials with notice and an opportunity to respond" and thus did not exhaust his administrative remedies).  In addition, with respect to defendant's contention about money damages, it is irrelevant whether plaintiff requested monetary damages in his "original" grievance, as the Tenth Circuit has noted that "'one "exhausts" processes, not forms of relief.'" *Howard v. Waide*, 534 F.3d 1227, 1244 n.9 (10th Cir. 2008) (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)).  Ultimately, defendant does not cite any authority establishing that the Court must find that plaintiff's alternative versions of the grievance form failed – as a matter of law – to exhaust the available administrative remedies.  The Court thus denies defendant's motion based on this line of attack.

### 2.  Did plaintiff comply with Level 3 of the grievance procedure?

Defendant next contends that plaintiff failed to exhaust his administrative remedies because he did not submit his appeal to the Secretary of Corrections in compliance with Level 3 of the grievance procedure.  *See* Kan. Admin. Reg. § 44-15-101(d)(3).

Defendant initially carries the "burden . . . to prove administrative remedies were available and plaintiff failed to exhaust these remedies."  *Sharrock*, 2011 WL 5526444, at *1 (citing *Celotex*, 477 U.S. at 323; *Purkey v. CCA Det. Ctr.*, 263 F. App'x 723, 726 (10th Cir. 2008)).  Defendant supports his argument with two affidavits, one from Trudi Temple and another from Doug Burris.  Ms. Temple, a Senior Administrative Assistant at EDCF who serves as custodian of the inmate grievance records, testified she reviewed the grievance appeal records of plaintiff.  Her testimony establishes that the business records maintained by the Secretary of Corrections do not contain a record showing plaintiff appealed his Grievance # 17960 to the

18

Secretary of Corrections after EDCF's Warden rejected it.  Mr. Burris, the Corrections Manager

in the Division of Facilities Management and designee to the Secretary of Corrections for review

and disposition of inmate grievance appeals, reviewed plaintiff's grievance appeal records for the

period of January 1, 2012 to May 7, 2012, and he testified that these business records do not

contain any grievance submitted to the Secretary of Corrections.  The Court finds that defendant,

therefore, has satisfied his initial burden to show that plaintiff failed to exhaust the relevant

administrative remedy available for his claim.  *Id.*

Because defendant has met the initial burden imposed by a failure to exhaust defense,

"the burden shifts to plaintiff to show a genuine issue for trial."  *Id.* (citing Fed. R. Civ. P. 56(e)).

Trying to meet this burden, plaintiff has furnished evidence that on February 15, 2012, he

submitted an Account Withdrawal Request, seeking $0.45 in postage to send legal mail to the

Secretary of Corrections, Landon State Office Building, 900 Jackson, 4th Floor, Topeka, Kansas

66612.  (Doc. 1-1 at 6)  The withdrawal request contains the signature of "Perkins," dated

February 15, 2012.  (*Id.*)  Plaintiff also submitted an Appeal of Grievance to Secretary of

Corrections form that he completed.  The form is dated February 15, 2012, and it is accompanied

by a handwritten note.  (*Id.* at 8-13)  Moreover, in the exhibits plaintiff filed in response to

defendant's motion, he included an Inmate Request to Staff Member form dated August 16,

2013.  In it, he asked "Unit Team Perkins":

> Remember last year when it was February 15, 2012 and I was in your Pod, and I
> camed back from the local library and it was around 3:16p.m., and I needed your
> signature to send out my grievance about the sexual assault from a SSI officer that
> I was telling you and S. Sgt. Smith when we was in your office, to the Secretary
> of Corrections.  I need an affidavit from you stating that you seen the grievance
> that I sent to the Secretary of Corrections with your signature and dated from you
> so I can attached that affidavit to my responds back to the Judge.

(Doc. 45 at 8 (*sic*))  Perkins replied August 22, 2013 and said:  "I do recall this issue.  We discussed it on 2/27/2012.  I did sign & deliver your mail on 2/15/2012, the copy of the attached SPO shows that it was mailed from the EDCF mailroom.  Your Exhibit C [to plaintiff's Complaint in this case]."  (*Id.*)  The referenced exhibit is a copy of the legal postage request described above.  (*See* Doc. 1-1 at 6)

Based on the current state of the summary judgment record which the Court must use to measure defendant's motion, the Court concludes that plaintiff has submitted evidence from which a rational fact-finder could infer that plaintiff mailed his appeal to KDOC's Secretary. Naturally, the fact-finder might reach the opposite conclusion, finding the inference of compliance not as persuasive as defendant's evidence about the content of the Secretary's business records.  But when the Court applies the summary judgment standard to the record presented with this motion, it cannot find the predicate fact as an uncontroverted one.

In sum, the Court concludes that defendant Carrell has failed to carry his burden to establish that plaintiff failed to exhaust the administrative remedies Kansas law made available to him.  This means the Court must deny defendant's motion as it applies to plaintiff's § 1983 claim.

## C.  Exhaustion Under Kan. Admin. Reg. § 44-16-104a (Personal Injury Claims)

Last, defendant argues that plaintiff failed to file a personal injury claim as required under Kan. Admin. Reg. § 44-16-104a.  *See also* KDOC Internal Mgmt. Policy and Procedure § 01-118.  "State law requires inmates to exhaust 'administrative remedies' . . . prior to bringing a civil action against 'the state of Kansas . . .  the secretary of corrections, the warden, the sheriff,

20

or an employee . . . while such employee is engaged in the performance of such employee's duty.'" *Redford*, 2013 WL 781102, at *6 (quoting K.S.A. § 75–52,138). The relevant Kansas statute also requires inmates to file proof of exhaustion "upon filing a petition in a civil action." *Id.* (citing § 75-52,138).

To prevail on his motion for "summary judgment, defendant bears the initial burden . . . to prove administrative remedies were available and plaintiff failed to exhaust these remedies." *Sharrock*, 2011 WL 5526444, at *1 (citing *Celotex*, 477 U.S. at 323; *Purkey*, 263 F. App'x at 726). In Kansas, § 44-16-104a(a) requires inmates to bring claims for personal injury "to the facility and secretary of corrections within 10 calendar days of the claimed personal injury." Here, defendant has submitted an affidavit asserting that plaintiff failed to file such a claim for personal injury as this regulation requires. (Doc. 41, Ex. B at 2, ¶ 7) This submission satisfied defendant's initial burden recognized in *Sharrock*.

Plaintiff never responds directly to defendant's evidence or otherwise claims that he made such an administrative claim. This means plaintiff has failed to discharge the duty imposed by K.S.A. § 75-52,138 because he has not submitted, with his Complaint or otherwise, "proof that the administrative remedies [that apply to a personal injury claim] have been exhausted." *Id.* This entitles defendant Carrell to summary judgment against any personal injury claims that plaintiff's Complaint might intend to assert against him.[5]

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for

---

[5] Nor can plaintiff rely on the argument that he has exhausted the remedies made available to him under article 15 of chapter 44 and so, he need not satisfy the "distinct" avenue of administrative remedies available under article 16 for inmates asserting a personal injury claim. *Redford*, 2013 WL 781102, at *6 ("Of note, the administrative procedures governing inmate personal injury claims are separate and distinct from the procedure for handling grievances. [Kan. Admin. Reg.] 44-15-101a(d)(2) expressly provides, 'The grievance procedure shall not be used in any way as a substitute for, or as part of, the . . . property loss or personal injury claims procedure.'").

summary judgment (Doc. 40) is granted in part and denied in part in accordance with this order. To the extent that plaintiff's Complaint asserts any claim for personal injury arising under state law, he has failed to exhaust his administrative remedies and the Court enters summary judgment against such a claim.  The Court denies defendant's motion as it applies to plaintiff's § 1983 claim asserting that defendant violated his constitutional rights.

**IT IS SO ORDERED.**

**Dated this 10th day of September, 2014, at Topeka, Kansas.**


**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**